UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. ESTATE OF ROBERT GADBOIS, et al., Plaintiffs, v. PHARMERICA CORPORATION, Defendant. | C.A. No. 10-471-JJM-LDA |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

This *qui tam* suit centers around allegations that defendant PharMerica Corporation has violated provisions of the Federal False Claims Act and various state analogues. The original complaint brought by relator Robert Gadbois, since deceased, was dismissed by this Court in 2014. Mem. & Order, *United States ex rel. Gadbois v. PharMerica Corp. (Gadbois I)*, No. 10-471 (D.R.I. Oct. 3, 2014) (Lisi, J.), ECF No. 53. The United States Court of Appeals for the First Circuit vacated the decision and remanded for further proceedings. *United States ex rel. Gadbois v. PharMerica Corp. (Gadbois II)*, 809 F.3d 1 (1st Cir. 2015).

The case is now before the Court on two motions: the Estate of Robert Gadbois' motion for leave to file its Third Amended Complaint (ECF No. 64), and the Estate's motion to strike PharMerica's response in opposition to the Estate's motion for leave (ECF No. 72). For the reasons set forth herein, the Court DENIES the Estate leave

to file its Third Amended Complaint, as supplementation would be futile. The Court also DENIES as moot the Estate's motion to strike.

I.    BACKGROUND

The facts and posture of this matter have been extensively laid out in this Court's prior decision, *see Gadbois I*, slip op. at 2–13, in the First Circuit's opinion in this case, *see Gadbois II*, 809 F.3d at 3–4, and in the briefing by the parties on these motions. The Court assumes the reader's familiarity with those details and recites only what is relevant to the issues currently before it.

In July of 2009, Jennifer Denk, a pharmacist previously employed by PharMerica in Pewaukee, Wisconsin, filed a *qui tam* action against PharMerica in the United States District Court for the Eastern District of Wisconsin (the "Wisconsin action"). She subsequently filed a first amended complaint in January of 2010. Ms. Denk alleged that PharMerica violated the False Claims Act by submitting fraudulent claims for monetary payment through Medicare and Medicaid, including for Schedule II through V controlled substances. Pursuant to the governing statute, the Wisconsin action was filed under seal. *See* 31 U.S.C. § 3730(b)(2).

During this time, the original relator in this action, Robert Gadbois, worked as a pharmacist employed by PharMerica in its Warwick, Rhode Island, pharmacy. In November of 2010, he filed this *qui tam* suit alleging that PharMerica was engaged in schemes related to overbilling Medicaid and Medicare Part D for controlled and non-controlled medications. Mr. Gadbois alleged that these false claims brought undue profit to PharMerica, and that these schemes were prevalent beyond just

PharMerica's Warwick pharmacy. Mr. Gadbois' allegations reached Schedule II through V drugs.

In May of 2013, the United States intervened in the Wisconsin action, and the next month, the complaint was unsealed. A few months later in November, the United States declined to intervene in Mr. Gadbois' action. The complaint in this action was unsealed and ordered served on PharMerica. Shortly thereafter, the State of Rhode Island, on behalf of itself and other named states, similarly declined to intervene in this action. Mr. Gadbois filed his second amended complaint in February of 2014.

On October 3, 2014, this Court dismissed Mr. Gadbois' second amended complaint under the first-to-file bar of the False Claims Act, 31 U.S.C. § 3730(b)(5).[1] *Gadbois I*, slip op. at 22–23. This Court held that Mr. Gadbois' complaint alleged the same scheme as contained in Ms. Denk's complaint, and that Mr. Gadbois' allegations related to non-controlled medications were insufficient to distinguish the claims. *See id.* at 21–22. Specifically, this Court found that, "[b]y the time Gadbois filed his initial complaint in this Court, the United States Government had already been alerted to Pharmerica's alleged fraudulent scheme on three occasions: Denk's meeting with government officials and Denk's filing of her original and first amended complaints." *Id.* "Whether the medications in question were controlled or non-controlled, the prescription information required prior to their dispensing was the same, and

---

[1] This ruling was made by a now-retired district judge of this Court.

dispensing either category of medication without a proper prescription disqualified it from reimbursement by Medicare and/or Medicaid." *Id.* at 22.

Mr. Gadbois appealed the Court's ruling to the United States Court of Appeals for the First Circuit. While that appeal was pending, two crucial developments unfolded. First, the Supreme Court decided *Kellogg Brown & Root Services, Inc. v. United States ex rel. Carter*, which interpreted the first-to-file bar as a temporal bar that dissolves when the precluding suit is no longer "pending." 135 S. Ct. 1970, 1979 (2015). Second, the Wisconsin action was settled and dismissed.

In light of these events, the First Circuit held that the jurisdictional bar underpinning this Court's order of dismissal had "dissolved." *Gadbois II*, 809 F.3d at 6. Faced with a complaint originally dismissed for want of jurisdiction, the Court of Appeals had a choice: allow the original dismissal to stand and require Mr. Gadbois to file a new action, or allow Mr. Gadbois to pursue supplementation under Federal Rule of Civil Procedure 15(d) to cure the jurisdictional defect. The First Circuit chose the latter course, reasoning that to require dismissal and refiling would be a "pointless formality." *Id.* The Court of Appeals thus vacated the dismissal and remanded the case for further proceedings.

Some six months later, on June 1, 2016, Mr. Gadbois died. His Estate was substituted as relator, through Mr. Gadbois' successor and the Estate's representative, Kristine Cole-Gadbois.

Acting on the First Circuit's decision, the Estate sought leave to file an amended and supplemental complaint in December of 2016.[2] ECF No. 64. Briefing related to this motion ensued over nearly the next year, including a motion by the Estate to strike PharMerica's response in opposition to the Estate's motion for leave to supplement. ECF No. 72. In June of this year, the original judge assigned to this case retired, and the matter was reassigned to this Court.

## II. STANDARD OF REVIEW

Courts should "freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). In addition to amending a complaint, a plaintiff may supplement her complaint "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Courts should allow supplementation "on just terms," and treat requests to supplement liberally. *Gadbois II*, 809 F.3d at 7 (comparing the Rule 15(d) standard to that of Rule 15(a)).

However, the right to amend or supplement is not absolute, and such motions should not be granted automatically. *See id.* Leave should be denied where the proposed revisions would be futile. *See id.; Maldonado v. Dominguez*, 137 F.3d 1, 11 (1st Cir. 1998). "Futility" means that the complaint, as amended, fails to state a claim or leaves the Court without subject-matter jurisdiction. *See D'Agostino v. ev3, Inc.*, 845 F.3d 1, 6 & n.3 (1st Cir. 2016). Where a proposed pleading would leave the Court

---

[2] Because the critical issue in this case is supplementation under Rule 15(d), the Court simply refers to this proffered pleading as the proposed supplemental complaint.

without subject-matter jurisdiction, the appropriate standard of review is that of a motion to dismiss under Rule 12(b)(1). *See Schock v. United States*, 21 F. Supp. 2d 115, 124 (D.R.I. 1998); *cf. Hatch v. Dep't for Children, Youth, & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001) (endorsing Rule 12(b)(6) standard where amendment would be futile for failure to state a claim).

## III.  DISCUSSION

PharMerica raises three primary arguments as to why supplementation would be of no avail.  Its opening argument is that the proposed supplemental complaint does not relate back to the date of the original complaint.  If this is so, PharMerica can take advantage of two defenses which have arisen since the original complaint was filed.  First, that this action is barred because it is based upon allegations already subject to a suit in which the Government is a party.  Second, that the suit is barred because substantially similar allegations have been publicly disclosed, and because the Estate cannot prove Mr. Gadbois was an original source of the information.

### A.  Relation Back

The supplemental allegation central to the Estate's proposed complaint is that the Wisconsin action has been settled.  This development, in conjunction with the Supreme Court's decision in *Kellogg*, 135 S. Ct. 1970, has "dissolved the jurisdictional bar" that caused this Court to previously dismiss this action.  *Gadbois II*, 809 F.3d at 6.

Although the jurisdictional bar no longer exists going forward, a critical question is whether the supplemental complaint relates back under Federal Rule of

Civil Procedure 15(c).[3] If the supplemental complaint does not take the date of the original complaint, then PharMerica may have several defenses that would render supplementation futile. *See id.* at 8 n.4 (citing *United States ex rel. Chovanec v. Apria Healthcare Grp. Inc.*, 606 F.3d 361, 362, 365 (7th Cir. 2010)).

In the time since the First Circuit ruled in this case, the Supreme Court has read the first-to-file bar as a provision that "require[s], in express terms, the dismissal of a relator's action." *State Farm Fire & Cas. Co. v. United States ex rel. Rigsby*, 137 S. Ct. 436, 443 (2016).[4] However, this was not an explicit holding of the case, *see generally id.*, and the decision did not explicitly overrule the First Circuit's opinion in *Gadbois II.* Thus, the Court must reject PharMerica's request to dismiss the Estate's complaint outright.

While the Supreme Court's dictum is procedurally at odds with the First Circuit's holding, the two can be reconciled to reach functional equivalence. The First

---

[3] In this case, the Court of Appeals did not reach the question of whether the first-to-file bar remains jurisdictional in light of its holding that a supplemental pleading can be used to cure a jurisdictional defect. *Gadbois II*, 809 F.3d at 6 n.2. As the First Circuit instructed this Court on remand to consider the Estate's motion to supplement, *id.* at 8, this Court similarly declines to reach the issue.

The Court does note, however, that the First Circuit has explicitly held that the first-to-file bar is jurisdictional. *See, e.g., United States ex rel. Wilson v. Bristol-Myers Squibb, Inc.*, 750 F.3d 111, 117 (1st Cir. 2014). While the First Circuit has recently questioned whether the provision remains jurisidictional, *see United States ex rel. Kelly v. Novartis Pharm. Corp.*, 827 F.3d 5, 12 n.9 (1st Cir. 2016), this Court is bound by the First Circuit's clear precedent until it holds otherwise.

[4] Two other courts of appeals that have since reached this issue have held that the first-to-file bar requires dismissal. *See United States ex rel. Carter v. Halliburton Co.*, 866 F.3d 199, 207 (4th Cir. 2017); *United States ex rel. Shea v. Cellco P'ship*, 863 F.3d 923, 929–30 (D.C. Cir. 2017).

Circuit realized that simply allowing Mr. Gadbois to supplement, rather than refile his action, would circumvent "pointless formality." *Gadbois II,* 809 F.3d at 6. For the formality of dismissal and refiling to indeed be pointless to the simpler alternative of supplementation, both courses of action must have the same legal consequences— that is, any supplemental complaint filed by the Estate to cure a jurisdictional defect must have the same legal effect as filing a new complaint. Thus, the Estate's proposed complaint cannot relate back, and must be given effect no earlier than the day the Estate sought leave to file it.

To hold otherwise would wreak the kind of havoc that courts have sought to avoid by requiring dismissal and refiling. If *qui tam* relators could file supplemental complaints and relate them back, those plaintiffs could file barebones complaints, "secure a place in the 'jurisdictional queue . . . and thereby trump any meritorious, related actions that were filed in the meantime'" by relating their supplemental complaints back. *United States ex rel. Carter v. Halliburton Co.,* 144 F. Supp. 3d 869, 882 (E.D. Va. 2015) (quoting *United States ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.,* 782 F. Supp. 2d 248, 263 (E.D. La. 2011)), *aff'd,* 866 F.3d 199 (4th Cir. 2017). Not relating back these supplemental allegations could also cure the hypothetical scenario that troubled the D.C. Circuit:

> [I]magine a situation in which relators A, B, and C each file a *qui tam* action alleging the same fraud. Relator A reaches the courthouse first and his action therefore goes forward. Relator B reaches the courthouse second, but the district court determines his suit is blocked by the first-to-file bar and thus dismisses it per the ordinary course. Relator C files last, and shortly thereafter, the first-filed action is dismissed. But suppose relator C filed her suit so late in the game that the district court fails to dismiss her action before dismissing the first-filed suit. Under

Shea's proposed rule, relator C would receive a windfall: she, unlike relator B, could simply amend her existing complaint and thereby secure herself pole position in the first-to-file queue. Relator C would jump past relator B for the opportunity to proceed with her suit (and to share in the government's reward).

*United States ex rel. Shea v. Cellco P'ship*, 863 F.3d 923, 930 (D.C. Cir. 2017) (citation omitted). By not allowing the supplemental complaint to relate back, relator C in the above hypothetical would have no advantage over relator B: whoever files her complaint first, whether new or supplemental, would win the race to the courthouse.

This approach finds support in the law on the interaction between relation back under Rule 15(c) and supplementation under Rule 15(d). Although these two provisions are neighbors, they do not speak to one another:

> Rule 15 does not indicate whether or under what circumstances a supplemental pleading will relate back to the date of the original pleading to avoid the effect of the governing statute of limitations. Rule 15(c), which provides generally for the relation back of amended pleadings, does not specifically refer to supplemental pleadings. Nor does Rule 15(d) make any mention of relation back; indeed, the Advisory Committee Note accompanying the 1963 amendment of Rule 15(d) states that the Committee did not attempt to deal with the interrelationship between statutes of limitations and supplemental pleadings.

6A Charles Alan Wright & Arthur R. Miller, *Fed. Practice & Procedure Civ.* § 1508 (3d ed.). Courts both have and have not applied the relation back doctrine to supplemental pleadings that cure jurisdictional defects. *See id.* The First Circuit held long ago that a supplemental complaint which enlarges the facts set forth in the original complaint, without stating a new cause of action or claim for relief, does not

relate back under Rule 15(c). *United States v. Russell*, 241 F.2d 879, 882 (1st Cir. 1957).[5]

The Estate insists it does not need to utilize the relation back doctrine to cure the jurisdictional defect in its original complaint. The Estate points to the First Circuit's decision in *ConnectU LLC v. Zuckerberg*, which held that "[t]he purpose of Rule 15(c) is to allow a plaintiff to avoid the preclusive effect of a statute of limitations so long as certain conditions are satisfied. The relation back doctrine has nothing to do with curing jurisdictional defects in an earlier pleading." 522 F.3d 82, 94 (1st Cir. 2008) (citations omitted). However, that decision involved an amended complaint, filed as of right, before any challenge to the district court's jurisdiction had been mounted. *See id.* Thus, the First Circuit's holding that the amended complaint did replace and cure original defects in the original pleading without operation of the relation back doctrine is not applicable here, where a proposed supplemental complaint is before the Court and where the Court's jurisdiction has been challenged. In essence, the Estate seeks to shoehorn a critical supplemental factual allegation into an "amended complaint" so that the entire pleading can take the date of the original complaint, either with or without the operation of the relation back doctrine.

---

[5] Although this decision predates the 1963 amendment to Rule 15(d), the amendment would not have affected this holding. The 1963 amendment was meant to give courts "discretion to permit a supplemental pleading despite the fact that the original pleading is defective." Fed. R. Civ. P. 15(d) advisory committee's note to 1963 amendment. The First Circuit in *Russell* allowed a supplemental complaint to cure a jurisdictional defect, and was thus consistent with the purpose behind the 1963 amendment. *See Russell*, 241 F.2d at 882; 6A Wright & Miller, *Fed. Practice & Procedure Civ.* § 1505 (3d ed.).

This conflates amendment under Rule 15(a) with supplementation under Rule 15(d), and as counsel for the Estate conceded at argument, the vehicle it seeks to use is supplementation and not amendment. *See* Hr'g Tr. 10:10–20, ECF No. 96.

As the First Circuit noted in this case, when ruling on a request to supplement, "[e]verything depends on context." *Gadbois II*, 809 F.3d at 7. The legal and factual context in this case provide sufficient justification to hold that the proposed supplemental complaint cannot relate back to or otherwise take the date of Mr. Gadbois' original complaint. If the Court were to allow supplementation, the effective date of the new complaint could be no earlier than December 27, 2016, the day the Estate sought leave to file it.

## B. Government Action Bar

PharMerica next argues that the government action bar applies to prohibit the Estate's suit, as this suit is based on the Wisconsin action and the Government was already a party to those proceedings as of December 27, 2016. The government action bar prohibits a relator from bringing a *qui tam* action "which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party." 31 U.S.C. § 3730(e)(3). This provision "must be analyzed in the context of [the] twin goals of rejecting suits which the government is capable of pursuing itself, while promoting those which the government is not equipped to bring on its own." *United States ex rel. S. Prawer & Co. v. Fleet Bank of Me.*, 24 F.3d 320, 326 (1st Cir. 1994) (quoting *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 651 (D.C. Cir. 1994)).

Mr. Gadbois' original complaint alleged "two schemes—one related to non-controlled medications, one related to controlled medications—that result in overbilling Medicaid and Medicare Part D and in providing undue profit to PharMerica." *Gadbois I,* slip op. at 2 (footnote omitted). In its original decision in this case, the Court compared these allegations to those of Jennifer Denk in the Wisconsin action, and concluded that they were part of the same scheme:

> The essence of relator Jennifer Denk's complaint in the Wisconsin action . . . is that PharMerica defrauded the United States government by billing Medicare and Medicaid programs for dispensing medications that were not eligible for reimbursement because of PharMerica's non-compliance with Medicare, Medicaid, and other laws and regulations relating to the dispensing of pharmaceutical products, including controlled substances. Denk specifically alleged that PharMerica dispensed (and sought reimbursement for) medications based on phone orders without a signed prescription, on faxed discharge orders, and on physician orders in the absence of any actual or claimed emergency. Denk also alleged that some of the prescriptions lacked the prescribing physician's signature; that they were non-specific as to quantity; and that some of the prescriptions were re-filled repeatedly, even when a signed prescription had not been received. Not only did Denk's complaint put the government on notice, it is uncontroverted that Denk met with [U.S. Drug Enforcement Administration] investigators and [U.S. Department of Justice] attorneys before she ever filed suit.

> By the time Gadbois filed his initial complaint in this Court, the United States Government had already been alerted to PharMerica's alleged fraudulent scheme on three occasions: Denk's meeting with government officials and Denk's filing of her original and first amended complaints. Although Gadbois seeks to distinguish his case from the Wisconsin action by including in his claims the dispensing of, and billing for, non-controlled medications, he has not established that such a distinction is material to the alleged fraudulent scheme. Whether the medications in question were controlled or non-controlled, the prescription information required prior to their dispensing was the same, and dispensing either category of medication without a proper prescription disqualified it from reimbursement by Medicare and/or Medicaid.

*Id.* at 21–22 (citations omitted). This holding is law of the case. *See Negron-Almeda v. Santiago*, 579 F.3d 45, 50–51 (1st Cir. 2009).

The Estate's proposed supplemental complaint does not alter the Court's holding, as the amendments still relate to the same scheme. For example, the proposed complaint specifies that it "encompass[es] claims to Medicare Part D for Schedule III through Schedule V controlled medication, and claims to Medicaid for Schedule III through V medication." Proposed Third Amended Complaint ¶ 3, ECF No. 91-1. Ms. Denk's allegations in the Wisconsin action included fraudulent billing to Medicare Part D and Medicaid of Schedule II through V controlled substances. *See Gadbois I*, slip op. at 10. None of the other proposed amendments to the complaint work to differentiate it from the scheme that this Court held was "based upon" the same essential facts as the Wisconsin action. *See Gadbois I*, slip op. at 22.

### To What Was the Government a Party?

The Estate argues that, even if the proposed complaint is based on the same scheme that Ms. Denk alleged in her Wisconsin action, the Government only intervened in the Wisconsin action to the extent it implicated Schedule II controlled medications billed to Medicare. As a result, the Estate urges, the Government was not a "party" to the remainder of Ms. Denk's allegations.

As PharMerica points out, this understanding belies what happened in the Wisconsin action, and is contrary to the text of the FCA. The Government intervened in the Wisconsin action pursuant to 31 U.S.C. § 3730(b)(2) and (4). Gov't's Notice of Election to Intervene, *United States ex rel. Denk v. PharMerica Corp.*, No. 09-720

(E.D. Wis. May 28, 2013). Those provisions provide that the Government "may elect to intervene and proceed with *the action*," § 3730(b)(2) (emphasis added), and that the Government shall "proceed with *the action*, in which case *the action* shall be conducted by the Government," § 3730(b)(4)(A) (emphasis added). The plain language of the statute makes clear that intervention serves to make the Government a party to the entire suit, not just certain claims or causes of action. *See United States ex rel. Eisenstein v. City of N.Y.*, 556 U.S. 928, 933 (2009) (holding the United States is a party to a privately filed FCA action where it intervenes according to § 3730); *see also United States ex rel. Bennett v. Biotronik, Inc.*, No. 2:14-cv-02407, 2016 WL 1587215, at *7 (E.D. Cal. Apr. 20, 2016) (explaining that, in *Eisenstein*, the Court "implicitly understood that intervention made the United States a party to the 'lawsuit,' the 'action,' the 'case,' or the 'litigation,' and not merely to an allegation or charge" (citation omitted)), *appeal docketed*, No. 16-15919 (9th Cir. May 23, 2016).

Indeed, numerous courts have concluded that the functional result of the Government's complaint in intervention is to amend the original pleading. *See, e.g.*, *United States ex rel. Serrano v. Oak Diagnostics, Inc.*, 568 F. Supp. 2d 1136, 1140 (C.D. Cal. 2008) ("The intervening complaint simply alters the complaint already filed."); *In re Pharm. Indus. Average Wholesale Price Litig.*, 498 F. Supp. 2d 389, 398 (D. Mass. 2007) ("The unique structure of the FCA supports the government's position that the government's complaint should be treated as an amended complaint that relates back to the relator's complaint under Rule 15(c)(1)."); *United States ex rel. Wyke v. Am. Int'l, Inc.*, No. 01-60109, 2005 WL 1529669, at *2 (E.D. Mich. June 20,

2005) ("[C]ourts have consistently found that an intervening complaint filed by the Government must be viewed as an amendment of the relator's initial complaint rather than an independent complaint by a new party."). This means that the Government became a party to Ms. Denk's whole action—every allegation, every cause of action—even if it elected only to proceed with (and ultimately settle) the claims related to controlled Schedule II drugs. The Government was aware of the wide-ranging scheme as alleged by Ms. Denk, including all of the allegations brought by the Estate; it investigated all of those claims; it intervened in Ms. Denk's action; and ultimately reached a settlement of that case. *See Bennett*, 2016 WL 1587215, at *6 (rejecting argument to consider suit as two proceedings—one in which government intervened and one in which it did not—and reasoned that understanding the case as one action "fits the purpose of § 3730(e)(3), to dispense with *qui tam* claims of wrongdoing the government has already discovered thanks to previous suits or proceedings").

### When Must the Government Have Been a Party?

The question becomes whether the Government is a "party" in the Wisconsin action within the meaning of the statute. The Estate urges that, if the Government were party to all of Ms. Denk's original allegations, it ceased to be when the Wisconsin action settled. The Estate points to the present-tense framing of the government action bar: that no person may bring an action based upon allegations "which *are* the subject of a civil suit . . . in which the Government *is* already a party." 31 U.S.C. § 3730(e)(3) (emphasis added). The Estate argues the present-tense words should be

given their natural meaning: that, by the time the supplemental complaint is filed, the action will not be based on any allegations then-subject to suit in which the Government is then a party.

There is merit to this argument. Ordinarily, words in the present tense include both present and future tense usage, but not necessarily the past tense. *See* 1 U.S.C. § 1. However, this rule is not always cut and dry. The Dictionary Act, for example, dispenses with this canon where "the context indicates otherwise." *Id.* And the Ninth Circuit has observed that "[t]he present tense is commonly used to refer to past, present, and future all at the same time." *United States v. Williams*, 659 F.3d 1223, 1227 (9th Cir. 2011) (alteration in original) (quoting *Coal. for Clean Air v. S. Cal. Edison Co.*, 971 F.2d 219, 225 (9th Cir. 1992)). There is particular reason here to examine this provision in the context of the full statute. *See Kellogg*, 135 S. Ct. at 1979 (noting FCA's provisions "present many interpretive challenges" and require work "to make them operate together smoothly like a finely tuned machine").

Neighboring provisions in the statute add context to how the Court should interpret the reach of "is already a party" in § 3730(e)(3). *See Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609, 631–32 (1973) (reaffirming the goal of interpreting an act's provisions together in context to best give meaning to legislative policy and purpose). One neighboring provision, commonly referred to as the public disclosure bar, provides in relevant part that:

> The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed . . .

in a Federal criminal, civil, or administrative hearing in which the Government or its agent *is a party.*

31 U.S.C. § 3730(e)(4)(A)(i) (emphasis added). Despite its present-tense requirement that the Government *is* a party, courts routinely find public disclosures in dismissed cases—cases which, according to the Estate's reasoning, the Government *was* a party but *is* no longer. *See, e.g., United States ex rel. Advocates for Basic Legal Equal., Inc. v. U.S. Bank, N.A.*, 816 F.3d 428, 431 (6th Cir. 2016) ("At least two sources publicly disclosed the first allegation. One was a 2011 consent order between U.S. Bank and the federal government, which qualifies as 'a Federal criminal, civil, or administrative hearing in which the Government . . . [was] a party.'" (alterations in original) (quoting 31 U.S.C. § 3730(e)(4)(A)(i))); *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 299 (3d Cir. 2016) ("information that was disclosed in a criminal, civil, or administrative hearing now qualifies as a public disclosure only if the information was disclosed in a federal case to which the government was a party"); *United States ex rel. Booker v. Pfizer, Inc.*, 188 F. Supp. 3d 122, 136 (D. Mass. 2016) ("The public disclosure bar of the FCA requires the dismissal of an action that makes allegations substantially similar to those already alleged in a prior federal hearing in which the government was a party."); *see also Bennett*, 2016 WL 1587215, at *8 (collecting cases). The scope courts have given the present tense "is a party" language in the public disclosure bar counsels in favor of a similar reading of the analogous language in the government action bar.

A second neighboring provision provides further context: the "first-to-file bar" (or perhaps now better understood as the "pending case bar"). In that provision,

17

Congress mandated that "no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). As discussed above, the Supreme Court in *Kellogg* held that this provision establishes a temporal bar that dissolves when the underlying pending lawsuit is dismissed. 135 S.Ct. at 1978–79. This interpretation—identical in scope to the Estate's proposed construction of § 3730(e)(3)—turned almost entirely on Congress's use of the word "pending." *Id.* Notably, this word is missing in the text of the government action bar. Had Congress wanted the government action bar to have the same reach as the pending case bar, it likely would have included this word. *See Rigsby*, 137 S. Ct. at 442 ("Congress' use of 'explicit language' in one provision 'cautions against inferring' the same limitation in another provision." (quoting *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 384 (2013))). The absence of this crucial word provides further evidence that the government action bar's scope differs from that of the pending case bar.

This understanding is consistent with the purpose of the government action bar: "rejecting suits which the government is capable of pursuing itself, while promoting those which the government is not equipped to bring on its own." *Prawer*, 24 F.3d at 326 (quoting *Quinn*, 14 F.3d at 651). The Estate, however, argues that the Court must adhere to the overall purpose of the FCA—to recover wrongfully claimed federal funds, and to encourage relators to assist—which will be hampered by this understanding of the government action bar.

The Estate's interpretation ignores the ebb and flow of Congress's amendments to the FCA's jurisdiction, recounted at length by the First Circuit in *Prawer*. *See id.* at 324–26. While the FCA once had broad reach, Congress contracted it with its 1943 amendments. *Id.* at 325. Finding those limits too stringent, Congress once again revised the FCA in 1986, this time loosening its strictures and adding, *inter alia*, the government action bar. *Id.* at 326. The First Circuit described Congress' goal with this goldilocks amendment as "walk[ing] a fine line between encouraging whistle-blowing and discouraging opportunistic behavior." *Id.* (quoting *Quinn*, 14 F.3d at 651). Ultimately, the court determined the purpose of § 3730(e)(3) was to prevent parasitic lawsuits which enriched the relator without exposing fraud the Government was not already aware of. *See id.* at 326–27; *accord United States ex rel. Batty v. Amerigroup Ill., Inc.*, 528 F. Supp. 2d 861, 876 (N.D. Ill. 2007) (§ 3730(e)(3) "was intended to prevent parasitic *qui tam* lawsuits that receive support from an earlier case without giving the government any useful return, other than the potential for additional monetary recovery" (citing *Prawer*, 24 F.3d at 327–28)); *see also Bennett*, 2016 WL 1587215, at *6 (collecting cases). To be sure, the recovery of funds for the Government fisc is an important goal of the FCA's *qui tam* provisions, but the purpose of the government action bar in that larger scheme must be given effect.

If the reading of the statute were as the Estate suggests, such that the government action bar dissolves whenever a suit in which the Government is a party is dismissed, the central policies behind the government action bar would be undermined. For example, after the Government is made aware of, investigates,

intervenes in, and settles a *qui tam* suit, subsequent original source relators (like Mr. Gadbois) could allege the same fraud, bring identical lawsuits, and bring no additional benefit to the Government except the recovery of additional funds. This would be plainly contrary to the purpose of the government action bar: to promote the exposure of additional fraud while weeding out duplicative suits the Government is capable of pursuing on its own. Where the Government already has been party to a suit based on the same allegations, the Government is clearly capable of pursuing the suit itself, and the government action bar should prohibit these duplicative successor suits.

The Estate ultimately cautions the Court not to interpret the scope of the government action bar too broadly: where a court finds the Government is litigating or has litigated the same claim, then the bar will prevent all future suits based on the same scheme, with no safety valve (such as the "original source" exception in the prior public disclosure bar). The Estate specifically invokes the Supreme Court's logic concerning the pending case bar:

> Under petitioners' interpretation, a first-filed suit would bar all subsequent related suits even if that earlier suit was dismissed for a reason having nothing to do with the merits. Here, for example, the *Thorpe* suit, which provided the ground for the initial invocation of the first-to-file rule, was dismissed for failure to prosecute. Why would Congress want the abandonment of an earlier suit to bar a later potentially successful suit that might result in a large recovery for the Government?

*Kellogg*, 135 S. Ct. at 1979.

This reasoning is inapposite as applied to the government action bar. For this concern to arise where the government action bar is at play, it will be in a case where

the Government received notice of the suit, investigated the claims, elected to intervene, and then, for whatever reason, chose to abandon the suit. Moreover, there *is* a safety valve: the text of the government action bar does not appear to preclude the Government itself from reinitiating litigation. The bar applies to "[a]ctions by private persons." 31 U.S.C. § 3730(b). The Government, however, can bring its own suit for violations of the False Claims Act under a separate provision not subject to the bar. *See* 31 U.S.C. § 3730(a).

For these reasons, the answer to the question of whether the Government is a "party" to the Wisconsin action within the meaning of the government action bar must be "yes."

\* \* \*

In sum, the Court has determined that this case is "based upon allegations or transactions" that are the subject of the Wisconsin action, an action to which the Government is a party. Because the Estate's proposed supplemental complaint can be effective no earlier than December 27, 2016, and because the Government was already a party to the Wisconsin litigation on that date, the government action bar precludes the claims set forth in the proposed supplemental complaint.

IV.     CONCLUSION

As the Court concludes that the proposed supplemental complaint cannot take the date of Mr. Gadbois' original complaint, and that the government action bar applies to the Estate's claims, the Court need not reach the applicability of the prior public disclosure bar. Granting the Estate of Robert Gadbois leave to file its

supplemental complaint would be futile, as the proposed complaint would leave the Court without subject-matter jurisdiction.

For the foregoing reasons, the Estate's motion for leave to file its Third Amended Complaint (ECF No. 64) is DENIED, as supplementation would be futile. The Estate's motion to strike (ECF No. 72) is DENIED as moot. The Court further declines to exercise its supplemental jurisdiction over the Estate's state law claims. Accordingly, the Court directs the Clerk to enter a judgment of dismissal. *See Gadbois II*, 809 F.3d at 8.

IT IS SO ORDERED.

John J. McConnell, Jr.
United States District Judge

November 13, 2017